UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALEJANDRO RIVERA, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 10-3500 |
| v. | : | MEMORANDUM OPINION & ORDER |
| MICHAEL R. PARSONS, GAVIN PHILLIPS, FELIX RIVERA, JR., and THE CITY OF MILLVILLE, | : : | |
| Defendants. | : | |

This matter is before the Court on a motion for summary judgment filed by Defendants Michael R. Parsons, Felix Rivera, Jr., and the City of Millville [24], joined by Defendant Gavin Phillips [26]. Oral argument was heard on the motions on November 20, 2012, and the record of that proceeding is incorporated here. For the reasons placed on the record that day, as well as those articulated below, the motions will be granted.

## **Background**

Plaintiff Alejandro Rivera ("Plaintiff") filed the Complaint in this matter on July 9, 2010 as the result of a March 9, 2009 altercation with Defendant police officers Michael Parsons, Felix Rivera, Jr. ("Rivera"), and Gavin Phillips, who were employed by Defendant The City of Millville. Plaintiff contends he was visiting family members in Millville that night when the Millville Police Department was called due to a "family dispute." Compl., ¶ 12. Plaintiff went to his sister's apartment that evening and got into an argument with his sister and mother regarding the preparation of food for his wife's upcoming baby shower. Pl. Dep., p. 13. Plaintiff was on Percocet at the time. Pl. Dep., p. 7. His sister "threw [him] out of the apartment and then [he] left, disturbed, bothered." Pl. Dep., p. 13.

Through her open kitchen window, Plaintiff's sister instructed him to leave the premises or she would call the police.  P. Dep., p. 15.  She closed the window and Plaintiff hit it with an open hand, breaking the window and cutting his hand.  Pl. Dep., p. 15-16.  He also broke a window on the other side of his sister's front door.  Pl. Dep., p. 18-19.  At that point, Plaintiff's sister called the police.  Yaris Rivera Dep., p. 21.  Next, Plaintiff got on top of the hood of his sister's van, denting the hood and shattering the windshield with his legs, and Rivera arrived on the scene.  Pl. Dep., p. 16.

Rivera "saw a Hispanic male pacing back and forth in the front of that building and he was being – yelling.  He was yelling, basically being real loud when he was talking."  Rivera Dep., p. 24.  When Rivera attempted to speak to Plaintiff, first in English and then in Spanish, Plaintiff made clear that he did not want to talk to Rivera, and told Rivera not to touch him.  Rivera Dep., p. 25-28.  Plaintiff's sister allegedly informed Rivera that Plaintiff had been drinking and had broken her windows.  Rivera Dep., p. 32.

Plaintiff, who did not speak or understand English, Pl. Dep., p. 21, 42, testified that he put his hands in front of him and told Rivera, who spoke Spanish, "if you are going to handcuff me, put the handcuffs through the front because I have a surgery."  Pl. Dep., p. 20.  Plaintiff's brother-in-law also testified to this.  Leon Dep., p. 21.  Then Phillips arrived at the scene and allegedly twisted Plaintiff's arm to the back, Plaintiff pushed Phillips with an open hand to the face, and he punched Plaintiff in the nose.  Pl. Dep., p. 19, 49, 86.  Plaintiff testified that Parsons and Phillips then kneed him in the groin area to get him to bend down, threw him on the floor, and climbed on top of his shoulder, handcuffing Plaintiff behind his back.  Pl. Dep., p. 19-20, 31, 33.

2

Plaintiff also testified that, at the time, he heard Rivera warn the other officers that Plaintiff had had shoulder surgery.  Pl. Dep., p. 21-22.  See also Leon Dep., p. 23.  Rivera, however, testified that as Phillips and Parsons approached, Rivera signaled to them that Plaintiff was going to have to be placed under arrest.  Rivera Dep., p. 38; accord Parsons Dep., p. 10.  Rivera grabbed Plaintiff's left wrist and began to pull it behind Plaintiff to place him under arrest.  Rivera Dep., p. 43.  Rivera testified that Plaintiff then pulled his left arm out of Rivera's grasp and struck Phillips in the face with an open hand.  Rivera Dep., p. 43-44.  See also Phillips Dep., p. 27.  Rivera then attempted to knock Plaintiff off balance and took him to the ground on his left side in a "controlled manner" and Parsons was able to handcuff him.  Rivera Dep., p. 51-52.  During that time, Rivera was not made aware of any problem with Plaintiff's left arm, Rivera Dep., p. 54, but in the processing room of the police station, Plaintiff "simply stated that he had some kind of surgery recently."  Rivera Dep., p. 55.  Similarly, Parsons and Phillips testified that at no point during the arrest did they hear anyone say anything about Plaintiff having recently had surgery.  Parsons Dep., p. 48; Phillips Dep., p. 37-38.

Plaintiff described the pace of the situation as follows: "When more patrol arrived, then I calmed down.  I was calming myself down, and that's when I said to [Rivera], put the handcuffs in front, but that's when [Phillips and Parsons] came out very quickly on top of me.  They came out very quickly, and then just came on top of me." Pl. Dep., p. 28.  Plaintiff's sister concurred, "everything happened so fast." Yaris Rivera Dep., p. 30.  "He started struggling until they threw him to the ground." Yaris Rivera Dep., p. 45.  Parsons characterized Plaintiff's actions as struggling and resisting.

3

Parsons Dep., p. 21.  He estimated that the struggle lasted about a minute.  Parsons Dep., p. 47.  Phillips also testified, "Alejandro began to struggle with [Rivera and Parsons], just moving about, not allowing them to place handcuffs on him."  Phillips Dep., p. 20.

Plaintiff recalls that there were "a lot" of people who had gathered, his sister and mother were yelling in Spanish, and his brother-in-law was speaking English and Spanish, saying the word "surgery."  Pl. Dep., p. 28-29, 46, 51.[1]  See also Leon Dep., p. 25.  Parsons also observed that upon his arrival at the apartment, approximately ten people had gathered.  Parsons Dep., p. 12-13.  Phillips testified that by the time Plaintiff was on the ground with Rivera and Parsons, twenty to thirty people had gathered.  Phillips Dep., p. 22.

Plaintiff admits that although he had a sling to stabilize his shoulder from the surgery he had 13-15 days prior, it "had rolled back to the back of [his] back" when he "went on the van to start jumping on the hood."  Pl. Dep., p. 37.

As a result of the March 9, 2009 incident, Plaintiff was charged with resisting arrest, disorderly conduct, aggravated assault, and criminal mischief.  On March 3, 2010, he pled guilty to criminal mischief and disorderly conduct and the charges of assault and resisting arrest were dismissed.  Also allegedly as a result of the incident, Plaintiff had to undergo a second shoulder surgery.  His physician, however, reported on March 12, 2009 that "It is difficult to tell whether he has sustained an injury to his shoulder from his arrest but it is unlikely."  Gelfand Certif., Ex. 12.

---

[1]Plaintiff's sister also testified, however, that Plaintiff was already handcuffed on the ground when her husband came outside.  Yaris Rivera Dep., p. 48.

The Complaint originally consisted of ten counts, but through briefing on the instant motions, Plaintiff has "concede[d] that his failure to comply with tort claim notice requirements compels dismissal of his state common law causes of action." Pl. Opp'n Br., p. 1. The remaining claims at issue here are: Count III - excessive force by Parsons and Phillips in violation of Plaintiff's Fourth Amendment rights; Count IV - failure by Rivera to intervene to prevent the use of excessive force; Count V - conspiracy among the individual Defendants to deprive Plaintiff of his civil rights; Count IX - municipal liability by Millville for failure to train and/or supervise its officers regarding use of force; Count VI - New Jersey Civil Rights Act claim of excessive force; and Count VII - New Jersey Civil Rights Act claim of failure to train.

## Discussion

### A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a

5

dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B. 42 U.S.C. § 1983**

Plaintiff's Constitutional claims are governed by 42 U.S.C. § 1983. A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, a plaintiff must demonstrate two essential elements to maintain a claim under section 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law. See Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989).

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a]

plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom. Canton v. Harris, 489 U.S. 378, 388 (1989). "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407 (1997).

      The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

      For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him. Graham v. Conner, 490 U.S. 386, 397 (1989). While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396). See also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

**C. Analysis**

      Plaintiff states a claim under the Fourth Amendment pursuant to 42 U.S.C. § 1983. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

      As to the claim of excessive force by Parsons and Phillips in violation of Plaintiff's Fourth Amendment rights, by all accounts, Plaintiff was not cooperative. All of the deposition testimony in the record characterizes Plaintiff's conduct as "struggling" and resistant. In light of the totality of circumstances surrounding Plaintiff's arrest, no jury could reasonably conclude that the police officers used "excessive force" in arresting Plaintiff. Rather, the amount of force used by the officers was commensurate with the amount of resistance put up by Plaintiff. Further, it would have been objectively reasonable under the circumstances for the officers to conclude that Plaintiff posed an immediate threat to the safety of the officers and his own family members. Therefore, even in the light most favorable to Plaintiff, he has failed to establish a violation of his constitutional right to be free from excessive force. Moreover, regarding Count IV - failure by Rivera to intervene to prevent the use of excessive force, Plaintiff himself testified that "Officer Rivera tried to intervene." Pl. Dep., p. 44.

      As to Count V - conspiracy among the individual Defendants to deprive Plaintiff of his civil rights, there is no evidence in the record of any "combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected

10

right." Fioriglio v. City of Atlantic City, 996 F. Supp. 379, 385 (D.N.J. 1998). Contrary to Plaintiff's argument, there is no record evidence of a "joint beating," Pl. Br., p. 10, in this case. Nor is there any evidence of an agreement among the Defendants to employ excessive force on Plaintiff.

Beside that there was no constitutional violation, regarding Count IX - municipal liability by Millville for failure to train and/or supervise its officers regarding use of force, Plaintiff has not shown a policy, attributed it to the city itself, with a causal link between execution of the policy and the injury suffered. See, e.g., McTernan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009) ("[A plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). The Court has considered Plaintiff's several arguments in support of this claim, Pl. Opp'n Br., p. 14-16, but none have adequate record support of a claim of municipal liability on the part of Millville. Therefore, summary judgment will be granted in favor of the City of Millville.

Regarding Count VI - New Jersey Civil Rights Act claim of excessive force -- and Count VII - New Jersey Civil Rights Act claim of failure to train – the analysis is the same as the federal claims disposed of above, and summary judgment will therefore be granted in favor of the Defendants on the entirety of the Complaint.

## Conclusion

For these reasons, as well as those expressed on the record during oral argument,

IT IS ORDERED on this 20th day of December, 2012 that the Defendants' motions for summary judgment [24, 26] are hereby GRANTED.

      /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.